# In the United States Court of Federal Claims

No. 14-261C

(Filed Under Seal: June 13, 2014)

(Reissued for Publication:  June 23, 2014)[1]

```
*****************************************
                                        *
LABORATORY CORPORATION OF               *   Post-award  Bid  Protest;  Agency's
AMERICA HOLDINGS,                       *   Use of Unstated Evaluation Criterion;
                                        *   Improper  "Apples  and  Oranges"
                  Plaintiff,            *   Price Comparison; Failure to Account
                                        *   for   Offeror's   Pricing   Errors;
v.                                      *   Irrational Technical Evaluation; Two
                                        *   Conflicting    Source    Selection
THE UNITED STATES,                      *   Decisions; Standards for Injunctive
                                        *   Relief.
                  Defendant,            *
                                        *
and                                     *
                                        *
QUEST DIAGNOSTICS INC.,                 *
                                        *
                  Defendant-Intervenor. *
                                        *
*****************************************
```

*David E. Frulla*, with whom were *Holly A. Roth*, *Elizabeth C. Johnson*, and *Howard H. Yuan*, Kelley Drye & Warren LLP, Washington, D.C. for Plaintiff.

*Corinne A. Niosi*, Trial Attorney, with whom were *Stuart F. Delery*, Assistant Attorney General, *Robert E. Kirschman*, *Jr.,* Director, and *Deborah A. Bynum*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C. for Defendant.

*Merle M. DeLancey*, with whom were *Justin A. Chiarodo*, and *Adele H. Lack*, Dickstein Shapiro LLP, Washington, D.C. for Intervenor.

---

[1]  The Court issued this opinion under seal on June 13, 2014 and gave the parties until June 20, 2014, to submit any proposed redactions of competition-sensitive, proprietary, confidential, or other protected information.  The parties submitted their proposed redactions, which have been accepted by the Court. Redactions are indicated by [. . .].

<u>OPINION AND ORDER</u>

WHEELER, Judge.

In this post-award bid protest, Plaintiff Laboratory Corporation of America Holdings ("LabCorp") challenges the selection by the Department of Veterans Affairs ("VA") of Quest Diagnostics, Inc. ("Quest") for award of a Blanket Purchase Agreement ("BPA"). The BPA is for laboratory testing and analysis services at five VA Medical Centers in upstate New York. LabCorp is the incumbent contractor, and has provided these services to the VA for approximately the past twelve years. The BPA will be for one base year and an option year.

The VA requested these laboratory testing services under the prospective contractors' existing Federal Supply Schedule ("FSS") contracts. Thus, an offeror must have held an FSS contract as a prerequisite to competing for these services. The solicitation included a 36-page pricing schedule listing 1,567 test types that could be ordered under the BPA. The VA provided estimated quantities for each test based upon its "FY 2014 estimated utilization" levels. For evaluating offeror proposals, the solicitation contained three technical evaluation factors (capability, interface compatibility, and customer support), a past performance factor, and a price factor. The solicitation stated that the non-price factors, when combined, were significantly more important than price.

A complicating problem in this acquisition is that none of the prospective contractors offered all of the 1,567 different test types under an FSS contract. Any proposal to provide the 1,567 tests necessarily would be a combination of FSS testing services and non-FSS testing services, called "open market" tests. The number of FSS tests and open market tests would vary for each contractor, but all of the competing contractors could offer the tests under the FSS category or the open market category. The 36-page pricing schedule contemplated that offerors would provide a unit price for each of the 1,567 tests for the base year and the option year, which when multiplied by the estimated quantity for each test, would yield a total price for all of the tests for both years.

In evaluating the three proposals received, the VA's Source Selection Evaluation Board ("SSEB") focused upon the number of laboratory tests that were listed on each offeror's FSS contract. For the three technical evaluation factors, the SSEB rated LabCorp with two "Good" ratings and one "Excellent" rating, and it rated Quest with three "Good" ratings. For the price factor, the VA evaluated laboratory test prices only for the tests covered by the offerors' FSS contract, which consisted of different numbers of tests for each offeror. This method constituted a classic "apples and oranges" comparison where the VA evaluated different numbers of tests, and different tests, for each offeror. In the VA's source selection decision, the decisional document initially stated that the source selection authority

("SSA") performed a best value analysis resulting in the selection of Quest, but this document does not state what the best value analysis was.  In a supplemental source selection decision prepared after LabCorp indicated that it would file a protest, the SSA stated that no best value analysis was necessary because LabCorp and Quest were considered equivalent in the technical evaluation.

In considering the entire record, the Court has great difficulty accepting the VA's method of conducting this acquisition.  Even allowing for the high level of deference afforded to the procuring agency, this award decision cannot stand.  The agency should redo the acquisition using proper procedures.  As explained in greater detail in this opinion, the Court finds the following VA actions to be arbitrary and capricious and lacking a rational basis:

- In performing a technical evaluation based mainly on the number of laboratory tests included on each offeror's FSS contract, the VA employed an evaluation factor that was not contained in the solicitation.  The Request for Quotations ("RFQ") does not say anything about the importance of the number of test types contained in an offeror's FSS Contract.

- The VA did not evaluate the offerors' total prices for the 1,567 tests as indicated in the solicitation.  Instead, the VA requested information from each offeror to identify which tests were covered on the offeror's FSS contract, and evaluated only the prices for the FSS tests.  For LabCorp, there were [. . .] FSS-covered tests, and for Quest there were [. . .] FSS-covered tests.  The evaluation of a different number of test types for each offeror did not result in a meaningful or rational comparison of prices.[2]

- Quest's price proposal contained [. . .] computational errors that, when corrected, would have increased its total price by $[. . .].  With these errors eliminated, the price difference between Quest and LabCorp for the base year and the option year was only $[. . .].  There is no evidence in the record indicating that the VA was aware of these errors, or of the small price difference between Quest and LabCorp when the errors are corrected.  Even if the VA's "apples and oranges" price comparison could survive, the VA lacked knowledge of the actual price difference between Quest and LabCorp and did not evaluate it.

---

[2]  In a prior ruling, the Court allowed Plaintiff to supplement the record with the declaration of Ariel H. Collis, an expert economist.  Lab. Corp. of Am. Holdings v. United States, No. 14-261C, 2014 WL 2446718 (Fed. Cl. June 2, 2014).  The Court relies upon the Collis Declaration simply to cite other plausible methods to evaluate prices, some of which would have shown LabCorp to be the most advantageous price.  The main point, however, is that the VA did not evaluate prices for all tests as it indicated it would in the solicitation.

- The VA's technical evaluation, in addition to employing an unstated evaluation criterion, failed to include review of many seemingly important performance factors addressed in the RFQ's Statement of Work ("SOW").  The comments from the agency's evaluators were cryptic at best, and emphasized only the FSS-based tests in each offeror's proposal.

- The SSA's original and supplemental source selection decisions are contradictory on whether the VA performed any best value trade-off analysis.  The original SSA decision says that the VA did perform a trade-off analysis, but the supplemental decision says that the VA did not perform a trade-off analysis.  On the record presented, the Court would have expected the agency to perform a best value trade-off analysis, but the VA did not possess any accurate technical or price information to perform a meaningful or rational trade-off analysis.

- Upon awarding the BPA to Quest, the VA relaxed the specifications so that Quest would have time to interface with the VA's VistA computer software system.  Quest estimated in its proposal that it would require [. . .] following the start of performance to complete each facility's interface.  After award, the VA granted Quest an indefinite extension, stating that it would not expect Quest to perform any services until it was able to do so.

The VA's errors in conducting the acquisition prejudiced LabCorp.  The record shows that the competitive proposals of LabCorp and Quest were extremely close from a technical and pricing standpoint, and that LabCorp might have been selected for award if the VA had conducted the acquisition rationally.  The Court finds that the factors for granting injunctive relief weigh heavily in favor of LabCorp, and accordingly, the Court will permanently enjoin the VA from proceeding with the BPA awarded to Quest.  If the VA wants to pursue this acquisition, the Court expects that the VA will issue an amended or new solicitation affording all interested parties an opportunity to compete.  The VA should evaluate proposals in accordance with the criteria and procedures contained in the amended or reissued solicitation.

I.     Factual Background[3]

A. The Solicitation

The VA issued RFQ No. VA528-13-Q-0540 on September 20, 2013, in contemplation of awarding a BPA against the successful offeror's current FSS Contract. Administrative Record ("AR") Tab 10 at 35, 50.  The solicitation included a SOW and a BPA Price Schedule.  AR Tab 10 at 117-61, 162-97.  In general, the RFQ called for laboratory testing and analysis services at the VA Medical Centers located in Buffalo, Canandaigua, Bath, Syracuse, and Albany, New York.  AR Tab 10 at 117.  The RFQ sought quotations for the 2014 base year and the 2015 option year.  AR Tab 10 at 62-63.

The RFQ provided that award would be made on a best value basis.  AR Tab 8 at 19. Specifically, the RFQ stated that the BPA would be awarded to "the responsible offeror whose quote conforming to the solicitation will be most advantageous to the Government." AR Tab 10 at 115.  The VA listed the evaluation factors and sub-factors in descending order of importance, with price as the least important factor.  Id.   First, the VA listed the technical sub-factors: (1) Capability; (2) Interface Compatibility; and (3) Customer Support.  Id.  The VA listed past performance as the second factor and price as the third.  Id.  The RFQ did not define the evaluation factors further.  Id.

The SOW listed different services required of an offeror, including "[s]pecimen pick up services," "[t]ransportation of samples in such manner as to ensure the integrity of the specimen," "[t]imely . . . and appropriate analysis of patient specimens," and "[c]onsult with ordering Laboratory on test requirements and results by telephone as needed."  AR Tab 10 at 117.  Neither the RFQ nor the SOW stated that the VA would evaluate an offeror's "Capability" based on the number of test types covered by the offeror's FSS Contract.  AR Tab 10 at 35, 117, 121-23.

Regarding the second technical sub-factor, the SOW mandated that the successful offeror supply an interface between its computer system and the VA's VistA software, which would allow the direct transfer of ordering information to the offeror's system and the direct download of testing results to the VistA system.  AR Tab 10 at 118.  Specifically, the VA required the offeror to provide: (1) a direct bi-directional data interface with the VistA systems; and (2) telecommunications equipment for entering and sending testing requests and for receiving test results.  Id.  In case of a transition, the RFQ mandated that a new contractor begin performance on October 1, 2013 (later amended to February 1, 2014).  AR

---

[3] The facts in this decision are taken from the administrative record.  The pages in the administrative record are numbered in sequence, and the documents are divided by tabs.  The Court's citations to the administrative record generally are to the page numbers, except that large documents also are referenced by the tab number.

Tab 10 at 63.  Further, the RFQ required a contractor to make every effort to interface quickly with the VistA system so that the VA could place orders and receive results as soon as possible.  Id.  The VA's internal acquisition plan required that the contractor "be able to receive specimen samples immediately upon award and all equipment exchanges and interface adjustments will begin on award if awarded to a new contractor."  AR Tab 1 at 2.  Despite this requirement, the VA estimated that a new contractor's system would need a minimum of twelve months to fully integrate with the end users.  Id.

The BPA Price Schedule listed 1,567 different test types that the VA sought to include and the "FY 2014 estimated utilization" levels for each test based on prior history of actual volumes.  AR Tab 10 at 162-197.  Offerors were instructed to use the utilization levels to calculate the price per test and total price per year of each test for the base year, option year, and the base plus option years.  Id.  The RFQ stated that the VA would compare the offerors' prices "by adding the total price for all options to the total price for the basic requirement."  AR Tab 10 at 115.

B.  Submittal of Proposals

LabCorp and Quest timely submitted quotations on October 23, 2013, the deadline for proposals.  AR Tab 15 at 292; AR Tab 18 at 482.  [. . .], a third offeror not involved in this litigation, also submitted a quote.  AR Tab 14 at 202.  LabCorp is the incumbent offeror.

Because the VA failed to state in the RFQ that an offeror should only include tests on its FSS in its bid, no offeror limited its proposal to FSS Contract tests.  AR Tab 16 at 411-47; AR Tab 17; AR Tab 19 at 818-927.  As a result, on November 8, 2013, the VA's contract specialist asked each offeror to identify the FSS and open market tests listed in its proposal.  AR Tab 34 at 1720; AR Tab 35 at 2079-80.  Accordingly, on November 14, 2013, LabCorp submitted an updated BPA Price Schedule marking [. . .] of the 1,567 requested tests as included on its FSS Contract.  AR Tab 17.  On November 19, 2013, Quest also submitted an updated BPA Price Schedule demonstrating that its FSS Contract contained [. . .] of the requested tests.  AR Tab 19.  No offeror deleted its open market Contract tests from its updated BPA Price Schedule.  AR Tab 16 at 411-47; AR Tab 17; AR Tab 19 at 818-927.

Additionally, the VA did not acknowledge Quest's computational errors in its proposal.  Collis Decl. ¶ 9, 11.  For [. . .] tests on its FSS, Quest failed to multiply the price per test in the base year by the FY 2014 estimated utilization level.  Id. at 11.  For example, the total base year price for "Ova + Parasite Exam" should have been the unit price for the base year ([. . .]) multiplied by the expected utilization level (100), equaling $[. . .].  Id.  Yet Quest mistakenly listed the total base year price as only $[. . .].  Id.; AR 889.  Because Quest

6

priced the total base year and total option year identically, the errors were multiplied by two when Quest calculated the total price for the entire two year contract.  Collis Decl. ¶ 14, 15.  As a result, Quest underpriced its proposal by $[. . .] and should have listed its total two year price as $[. . .] rather than $1,810,639.  Id. at 16.

C.  Evaluation of Proposals

To evaluate proposals, the VA generated a source selection plan that established an SSA to select the best value offer.  AR Tab 8 at 19-20.  The plan established a five-person SSEB to evaluate each proposal based on the RFQ's factors and sub-factors.  AR 21.  The plan provided the SSEB with an adjectival rating system to apply to the technical sub-factors: Excellent, Good, Satisfactory, Marginal, and Unsatisfactory.  AR 23.  The SSEB individually rated the offerors on each technical sub-factor and then assigned consensus ratings.  AR Tab 25 at 1102-03; AR Tab 26 at 1106-07.  One evaluator appears to have been confused, as she assigned LabCorp a "Satisfactory" rating for "Capability" because she was "no[t] sure how many tests would be on the open market," even though LabCorp previously indicated that its FSS Contract contained [. . .] of the 1,567 requested tests.  AR Tab 22 at 1085; AR Tab 17.  This evaluator also identified [. . .] under LabCorp's "Interface Compatibility" sub-factor, and "[. . .], resulting in an overall LabCorp rating of "Satisfactory."  AR Tab 37 at 2369.  The same evaluator identified nearly the same [. . .] plus the identical [. . .] for Quest's "Interface Compatibility" sub-factor, but then assigned Quest a higher rating of "Good" for this sub-factor.  AR Tab 23 at 1097.

The agency also used an adjectival rating system for the past performance factor based upon perceived risk: Very Low, Low, Moderate, High, Very High, and Neutral/Unknown Risk.  AR Tab 8 at 23-24.  LabCorp and Quest both received a "Very Low" risk rating.  AR Tab 26 at 1107.  After reviewing the SSEB's ratings, the SSA assigned the offerors an overall technical rating and an overall rating based on the strengths, weaknesses, and evaluated performance risks for each offeror.  AR Tab 25 at 1103-05; AR Tab 26 at 1107-09.  Although LabCorp received an "Excellent" for the second technical sub-factor, both LabCorp and Quest received "Good" overall technical and overall ratings.  Id.  The overall ratings were as follows:

|  | Capability | Interface Compatibility | Customer Support | Overall Technical | Past Performance | Overall |
|---|---|---|---|---|---|---|
| **LabCorp** | Good | Excellent | Good | Good | Very Low | Good |
| **Quest** | Good | Good | Good | Good | Very Low | Good |

Regarding price, the VA only compared the aggregate price for tests offered under the FSS Contracts.  AR Tab 28 at 1284.  The aggregate price consisted of the price per test multiplied by the FY 2014 estimated utilization level totaled over the base and option years. Id.  LabCorp offered on its FSS [. . .] of the 1,567 test types requested in the BPA Price Schedule at an aggregate price of $[. . .].  Id.  Quest offered on its FSS [. . .] of the 1,567 test types requested at an aggregate price of $[. . .].  Id.  As this computation included [. . .] errors, the true Quest price was $[. . .].  Collis Decl. ¶ 16.  However, LabCorp and Quest only offered [. . .] of the same tests and thus each offered [. . .] distinct tests; LabCorp listed [. . .] tests on its FSS Contract distinct from Quest, and Quest listed [. . .] tests on its FSS Contract distinct from LabCorp.  Collis Decl. ¶¶ 19-20, 26.  For the tests in common, LabCorp's total price was $[. . .] and Quest's total (corrected) price was $[. . .].  Id. at 27. Alternatively, LabCorp's aggregate price for the [. . .] of the 300 top utilized tests it offered was $[. . .], but Quest's aggregate price for the same [. . .] tests was $[. . .].  Collis Decl. ¶ 41.  The VA evaluators individually considered the 300 top utilized tests, noting that LabCorp offered [. . .] of the tests and Quest offered [. . .] of the tests.  AR 1278.

D.  Source Selection Decision

In its Source Selection Decision ("SSD"), the SSA's entire best value analysis stated:

> [LabCorp] only offered [. . .] of the total tests on FSS and [. . .]
> offered the most tests on FSS at [. . .].  [. . .].  Quest's quote
> offers the second highest number of tests on FSS and is the
> lowest quote of all offers.

AR Tab 28 at 1284.  Although the SSA stated that "a best value trade-off award determination [was] made," the SSA did not provide an analysis of any cost-technical trade-off between LabCorp's and Quest's proposals.  AR 1285.

The VA awarded the BPA to Quest, although Quest's proposal estimated that it would require [. . .] following the initial project initiation to complete each facility's software interface.  AR Tab 18 at 595.  After award, the VA granted Quest an indefinite extension, stating that "we will not be expecting [Quest] to perform any of those services until [Quest is] able to do so."  AR Tab 35 at 2036-38.

E.  The Protest

On January 27, 2014, the VA informed LabCorp that the agency awarded the BPA to Quest.  AR Tab 34 at 1789.  On February 21, 2014, LabCorp filed a pre-filing notice, pursuant to Appendix C of the Rules of the Court of Federal Claims ("RCFC").  The notice informed Defendant and the Court of LabCorp's intent to file a complaint challenging the VA's award to Quest and to seek declaratory and injunctive relief.  On February 25, 2014,

Defendant's counsel contacted counsel for LabCorp, who agreed not to file a complaint until the VA had completed corrective action by issuing a new SSD.

On March 27, 2014, the VA issued an "Addendum" to its SSD, which introduced two aspects to be considered under the "Capability" sub-factor: (1) the total number of tests offered on the offeror's current FSS; and (2) the overall capability and mechanisms used to ensure contract performance within the required period after the award.  AR Tab 31 at 1384. The Addendum stated that the number of tests on Quest's FSS plus "more specific strengths and weaknesses" demonstrated Quest's proposal as superior.  Id.  Further, the Addendum specified that the number of tests on Quest's proposal "balance[] any perceived superiority that the proposal from Laboratory Corporation may have since its score for the Technical sub-factor 2 was a rating of Excellent."  Id.  The Addendum concluded that the VA need not conduct a best value trade-off between LabCorp and Quest's proposals as the two were "essentially equal," though the SSD stated the VA had already conducted a best value analysis.  AR Tab 28 at 1285; AR Tab 31 at 1388.  Thus, the VA confirmed the award to Quest and notified LabCorp of its decision on March 31, 2014.  AR Tab 32 at 1389.

LabCorp filed its bid protest in this Court on April 4, 2014.  LabCorp challenges the VA's contract award on multiple grounds, including that the technical and price evaluations were arbitrary and capricious, and lacked a rational basis.  LabCorp also contends that the VA did not conduct a best value trade-off analysis as stated in the SSD.  Under Modifications P00006 and P00007 to its current contract, LabCorp is continuing to perform the required services through June 30, 2014, pending the outcome of this case.

After the parties' full briefing, the Court heard oral argument on June 4, 2014.  The case is now ready for decision.

II.   Discussion

A.  Standards for Decision

In bid protest cases, courts review agency actions under the "arbitrary and capricious" standard.  See 28 U.S.C. § 1491(b)(4) (2012) (adopting the standard of review "set forth in [5 U.S.C. § 706]").  This standard "is highly deferential" and "requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors."  Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000) (citing Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974)).  Thus, as long as there is "a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion."  Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989). If, however, "the agency entirely fail[s] to consider an important aspect of the problem[or] offer[s] an explanation for its decision that runs counter to the evidence before the agency,"

then the resulting action lacks a rational basis and, therefore, is defined as "arbitrary and capricious."  Ala. Aircraft Indus., Inc.-Birmingham v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)) (internal quotation marks omitted).

B.  Flaws in the Procurement

1.  The VA Applied an Unstated Evaluation Criterion.

The VA applied an unstated evaluation factor when it used the number of test types on FSS Contracts as a "critical element" in scoring proposals.  It is black letter law that agencies must evaluate offerors' proposals based on the evaluation criteria stated in the solicitation.  See, e.g., AshBritt, Inc. v. United States, 87 Fed. Cl. 344, 374 (2009).  An agency has broad discretion in the evaluation of bids.  Wackenhut Servs., Inc. v. United States, 85 Fed. Cl. 273, 293 (2008).  However, the agency's technical evaluations must be consistent with the factors and procedures outlined in the solicitation.  L-3 Commc'ns EOTech, Inc. v. United States, 83 Fed. Cl. 643, 653 (2008).  If an agency's evaluation of proposals differs significantly from the process disclosed in the solicitation, the agency's decision lacks a rational basis.  360Training.com, Inc. v. United States, 106 Fed. Cl. 177, 184 (2012).

Here, neither the RFQ nor SOW indicated that the VA would evaluate offerors' proposals based on the number of FSS test types listed.  Nonetheless, the record demonstrates that the number of FSS test types became the predominant differentiator used in selecting Quest.  The Court finds that the VA's reliance on this unidentified evaluation factor renders the VA's evaluation inconsistent with the RFQ.

The Government argues that LabCorp's challenge to the evaluation criterion is untimely under Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1313 (Fed. Cir. 2007).  However, the Court finds that LabCorp had no obligation to seek clarification of the "Capability" sub-factor prior to contract award because no reasonable party would have known that the VA would determine "Capability" based on the number of available FSS test types.  The Government maintains that the parties should have known that the VA would limit its evaluation to FSS test types because the solicitation was for a FAR Part 8 procurement.  The Court rejects this explanation because the VA initially solicited information about all 1,567 tests and did not distinguish between FSS and open market tests.  Indeed, all three offerors provided pricing information about FSS and open market tests.  Accordingly, the Court finds that the VA's decision lacks a rational basis because the VA's evaluation of proposals differed significantly from the process disclosed in the solicitation.

2.  <u>The VA Used an Irrational Price Evaluation.</u>

The VA's price evaluation also violated the terms of the RFQ.  It is well-settled that agencies must evaluate proposals based on the criteria in the solicitation.  <u>Banknote Corp. of Am., Inc. v. United States</u>, 56 Fed. Cl. 377, 386-87 (2003), <i>aff'd</i>, 365 F.3d 1345 (Fed. Cir. 2004).  Here, the RFQ indicated that the VA would evaluate the offerors' prices by "adding the total price for all options to the total price for the basic requirement."  The solicitation requested that each offeror price 1,567 different types of laboratory tests using the BPA Price Schedule.  The Price Schedule identified "total price" as the offeror's price for a particular test multiplied by the VA's estimated usage of that same test for the base and option years.  Neither the RFQ, nor the SOW, nor the Price Schedule disclosed that the VA would limit its consideration to the prices that offerors proposed for tests available under their respective FSS Contracts.

Many of this procurement's problems stem from the fact that the solicitation requested vendors to price all tests even though no vendor offered all tests on its FSS contract.  As LabCorp's counsel aptly described at oral argument, the requirement to price all tests was a "head-fake" because it appeared that the VA would consider all tests when evaluating price.  The protest thus turns on whether LabCorp was reasonable in believing that the price evaluation would encompass all tests.  The Court finds that this was the only reasonable interpretation.  Solicitation provisions must be interpreted in a manner that harmonizes and gives reasonable meaning to all provisions.  <u>Coast Fed. Bank, FSB v. United States</u>, 323 F.3d 1035, 1038 (Fed. Cir. 2003).  Here, the use of the term "total price" in the Price Schedule for all tests leads to the reasonable conclusion that the VA would evaluate all test prices listed therein.

According to the Government, "total price" in the context of a FAR Part 8 procurement means the total price for FSS tests.  The Government argues that it would have been impermissible for the VA to evaluate price based on open market tests in a procurement pursuant to FAR § 8.405-3(a)(1).  According to this logic, the VA could not procure any products or services that were not on an offeror's FSS Contract.  The Court finds this argument unavailing because no reasonable offeror would conclude that the "total price" would include only the FSS tests subset.  Indeed, all three offerors priced as many of the required 1,567 laboratory tests as possible.  The VA clearly sought pricing information for all tests, and the VA's decision to evaluate only the price of the FSS Contract tests violated the solicitation's unambiguous pricing instructions.

Even if the VA's price evaluation did not violate the RFQ, the VA's process was arbitrary and capricious because the VA conducted an unfair "apples and oranges" comparison.  "[T]he agency at a minimum [ is] required to evaluate offerors on an equal basis and in a manner such that the total cost to the government for the required services

could be meaningfully assessed." Simplicity Corp., B-291902, 2003 WL 1989428, *5 (Comp. Gen. Apr. 29, 2003). The FAR requires the contracting officer to ensure that "all quotes are fairly considered." FAR 8.405-3(b)(2)(vi). Thus, an "apples and oranges" assessment is improper when comparing dissimilar services or products.

Here, the VA created an "apples and oranges" comparison when it limited price evaluations to the FSS tests subset. LabCorp and Quest offered a negligible number of distinct tests when considering both FSS and open market tests. Conversely, LabCorp and Quest offered a significant number of different tests when examining only the FSS subset; LabCorp listed [. . .] tests on its FSS Contract distinct from Quest, and Quest listed [. . .] tests on its FSS Contract distinct from LabCorp. Thus, the proposals contained [. . .] distinct tests with only [. . .] tests in common. Yet the VA treated the proposals as if they were equivalent, not accounting for these important differences. The VA also failed to acknowledge Quest's [. . .] computational errors, which caused Quest to underprice its proposal by $[. . .]. Thus, the VA not only improperly conducted an "apples and oranges" comparison, but it did so with incorrect figures. Therefore, the Court finds that the VA's price comparison method renders the evaluation irrational.

The Government again argues that LabCorp's disagreement with the "apples and oranges" comparison is an untimely challenge to the RFQ. Blue & Gold Fleet, 492 F.3d at 1313. However, the Court finds that LabCorp has not waived its right to challenge the price term on this basis because the RFQ did not place LabCorp on notice. No reasonable party would have known that the VA planned to compare the prices of dissimilar test subsets. It was only after the VA limited its evaluation to FSS tests that the "apples and oranges" problem arose.

   3.   The VA's Technical Evaluation Lacked a Rational Basis.

The VA gave Quest a higher score than LabCorp on the first technical sub-factor, "Capability," because of the greater number of test types on Quest's FSS Contract. As described above, this was an unstated evaluation factor that failed to comply with the RFQ. If not for the use of the unstated evaluation factor, the VA would have determined that LabCorp was technically superior because LabCorp had a higher score on the second technical sub-factor. Thus, the use of an unstated evaluation criterion undermined the entire technical evaluation.

Moreover, the VA relaxed specifications so that Quest would have time to interface with the VA's VistA computer software system. Quest's proposal estimated that it would require [. . .] following the start of performance to complete each facility's interface. The VA granted Quest an indefinite extension after award and stated that it would not expect Quest to perform any services until it was able to do so. However, the RFQ required a

contractor to make every effort to interface quickly with the VistA system so that the VA could place orders as soon as possible. This relaxation of the specifications was a failure to comply with the RFQ.[4]

Besides violating the RFQ, the VA insufficiently documented its technical evaluation. An agency must articulate a satisfactory explanation for an action to permit effective judicial review. Timken U.S. Corp. v. United States, 421 F.3d 1350, 1355 (Fed. Cir. 2005). Specifically, the agency must articulate the reasons for its procurement decision including a rational connection between the facts found and the choice made. Distributed Solutions, Inc. v. United States, 104 Fed. Cl. 368, 377 (2012) (citation omitted). Here, the administrative record does not provide a satisfactory explanation for the VA's action. As noted, one evaluator identified [. . .] under LabCorp's "Interface Compatibility" sub-factor, and [. . .]. This resulted in a total LabCorp rating of "Satisfactory." The same evaluator identified nearly the same [. . .] plus the identical [. . .] for Quest's "Interface Compatibility" sub-factor, but then assigned Quest a higher rating of "Good" for this sub-factor. Such narratives lack a rational connection between the facts found and the choice made and are indicative of the VA's failure to explain its decision-making throughout the procurement.

FAR Subpart 8.4 provides for streamlined documentation. However, this subpart's "minimum documentation" objective still requires an agency to document the "evaluation methodology" and "rationale for any tradeoffs" used in making a selection. FAR 8.405-2(e). Subpart 8.4 may create a low bar for documentation, but the VA has fallen short of it here. Initially, the VA indicated that it had conducted a best value trade-off analysis and found Quest to be the winner. Recognizing that it had not documented any trade-off analysis, the VA submitted an addendum saying that a trade-off analysis was not needed because of technically equivalent proposals. The Addendum identified two factors as a basis for the technical equivalency: (1) the number of test types requested on the Price Schedule that each offeror had on its FSS contract; and (2) "specific strengths and weaknesses" identified for each offeror. The SSD contained no documentation explaining why this first factor should provide any advantage to Quest, when this is the same factor that was used to evaluate the "Capability" sub-factor. Moreover, the SSD failed to identify which of the individual evaluators' "strengths and weaknesses" supposedly make Quest's proposal superior to LabCorp's.

The Addendum offers little support for the VA's decision and is undermined by the fact that the Addendum was authored after the contract was awarded and after LabCorp filed

---

[4]   The agency's use of a transition period in the solicitation would have allowed an offeror like Quest sufficient time to begin performance by a required date. The VA did not specify any transition period in the solicitation.

a pre-filing protest notice with the Court.  It is well understood that the Court cannot review the agency's technical ratings through the lens of post-hoc rationalizations.  BayFirst Solutions, LLC v. United States, 102 Fed. Cl. 677, 685 (2012).  According to the Government, the Addendum clarified the award decision, but the Addendum appears to be an attempt at salvaging the award from the VA's failure to perform a meaningful trade-off analysis.

Furthermore, there is no basis in the record to conclude that the SSA evaluated Quest's and LabCorp's proposals "against all source selection criteria in the solicitation," or exercised "independent judgment."  FAR 15.308.  Though the SOW listed different services required of an offeror, the VA did not document any corresponding evaluation.  For example, "[t]ransportation of samples in such manner as to ensure the integrity of the specimen" and "[t]imely . . . and appropriate analysis of patient specimens" may fairly be interpreted as "Capability" components, but the VA neglected to analyze and rate these services.  Rather, the VA evaluated the "Capability" sub-factor solely on the number of test types on each offeror's FSS Contract.  Apparently the VA also overlooked the third technical sub-factor, "Customer Support," as nothing in the record indicates that the VA considered this sub-factor.  Accordingly, the Court finds that the VA's technical evaluation lacked a rational basis and adequate documentation.

4.  The VA's Award Decision Was Arbitrary and Capricious.

Ultimately, the VA's award decision was arbitrary and capricious because of the errors the agency made in its technical and price evaluations.  The VA improperly gave Quest an edge on the Capability sub-factor because of the number of test types on its FSS Contract.  This edge neutralized LabCorp's "Excellent" designation on "Interface Compatibility," which yielded a technical tie.  Price was then used as the "Best Value" tie-breaker using only the prices of an offeror's FSS tests.

If not for these improper evaluations, the VA would have been required to conduct a best value trade-off analysis and make a valid determination as to which quotation was "most advantageous" to the Government.  Under such analysis, the VA would have weighed the trade-off between LabCorp's technical strengths and its higher price.  Wackenhut Servs., 85 Fed. Cl. at 307.  If the VA had conducted such a cost-technical trade-off analysis, it may have determined that LabCorp's marginally higher-priced, technically superior proposal was more advantageous to the Government.  Accordingly, the Government's failure to conduct a best value trade-off analysis renders the VA's award decision arbitrary and capricious.

C.  Prejudice to LabCorp

Before the Court can grant injunctive relief, the plaintiff must show that the agency's irrational procurement process caused plaintiff to suffer prejudice.  Bannum, Inc. v. United

14

States, 404 F.3d 1346, 1351 (Fed. Cir. 2005).  Prejudice is a question of fact and exists where "there was a substantial chance that [the plaintiff] would have received the contract award but for [the agency's] error."  Advanced Data Concepts, 216 F.3d at 1057; Statistica, Inc. v. Christopher, 102 F.3d 1577, 1582 (Fed. Cir. 1996).  While trivial error in the procurement process does not justify relief, the agency's mistakes in this case surpass insignificant error.  Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1361 (Fed. Cir. 2009).

Here, LabCorp has shown that it suffered prejudice resulting from the VA's flawed evaluation methods.  By failing to reveal the number of FSS test types as an evaluation factor, the VA circumvented LabCorp's efforts to compete under the undisclosed criterion. For example, if afforded the opportunity, LabCorp could have added more tests to its FSS Contract or adjusted its prices.  In fact, the VA knew that LabCorp added new testing to its FSS Contract regularly.  Instead, the VA used the unstated criterion as the determining factor—simultaneously demoting LabCorp's and boosting Quest's overall technical scores. As a result, the VA assigned both offerors "Good" overall ratings, which removed the need for a best value trade-off analysis.  Indeed, the VA contradicted the original SSD when it stated in the Addendum that it need not conduct a trade-off analysis.

Furthermore, the VA improperly examined the total price of only the FSS tests without a common basis to allow a fair "apples to apples" comparison.  If LabCorp had known that the VA intended to evaluate dissimilar offers as if they were comparable, then LabCorp likely would have filed a protest prior to submitting its proposal.  Remarkably, nothing in the record indicates that the VA accounted for the major computational errors in Quest's pricing.  Without knowledge of Quest's actual price, the VA could not have evaluated the price factor fairly irrespective of the "apples to oranges" comparison.  In sum, the VA deviated from the RFQ terms, neutralized LabCorp's technical advantage, eliminated the need for a best value trade-off analysis, conducted an "apples to oranges" price comparison, and failed to recognize Quest's significant miscalculations.  The Court finds that LabCorp had a substantial chance of winning the contract without the VA's errors, and therefore LabCorp suffered prejudice.

   D.  Criteria for Injunctive Relief

The Tucker Act expressly empowers the Court to award "any relief that the court considers proper, including declaratory and injunctive relief."  28 U.S.C. § 1491(b)(2).  The Court must consider four factors before granting permanent injunctive relief: (1) whether the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors granting injunctive relief; and (4) whether granting injunctive relief serves the public interest.  PGBA, LLC v. United States, 389 F.3d 1219,

1228-29 (Fed. Cir. 2004) (citing <u>Amoco Prod. Co. v. Village of Gambell, Alaska</u>, 480 U.S. 531, 546 n.12 (1987)).   Plaintiff has the burden of establishing the four factors by preponderant evidence.   <u>MORI Assocs., Inc. v. United States</u>, 102 Fed. Cl. 503, 551 n.60 (2011) (citing cases).   In this case, LabCorp has shown by preponderant evidence that all four factors are met.   The Court thus grants permanent injunctive relief.

1. <u>Success on the Merits</u>

First, a plaintiff must prevail on the merits, as this is an essential factor in determining whether to issue a permanent injunction.   <u>MORI Assocs.</u>, 102 Fed. Cl. at 551. To succeed on the merits a plaintiff must show that the agency's actions satisfy the APA's "arbitrary and capricious" standard.   5 U.S.C. § 706(2).   Here, LabCorp has succeeded on the merits.   The VA applied an unstated evaluation criterion, lacked a rational basis for its technical and price evaluations, and never conducted a best value trade-off analysis.   As a result, the VA's actions were arbitrary, capricious, and not in compliance with applicable law.   Therefore, LabCorp has succeeded on the merits of its case.

2. <u>Irreparable Harm</u>

Second, the Court must determine whether the agency's actions will irreparably harm the plaintiff without injunctive relief.   This Court has found that irreparable harm exists where an offeror has lost the opportunity to compete fairly for a contract.   <u>HP Enter. Servs., LLC v. United States</u>, 104 Fed. Cl. 230, 245 (2012) (citing cases).   Moreover, it is well-established that when arbitrary procurement actions deprive an offeror of the opportunity to compete for a contract, the resulting lost profits are sufficient to constitute irreparable injury.   <u>MORI Assocs.</u>, 102 Fed. Cl. at 552 (finding irreparable injury where the plaintiff had performed many of the solicitation's required services under the incumbent contract). Here, LabCorp will lose the opportunity to compete fairly for the BPA without injunctive relief.    The VA conducted an irrational evaluation that obviated open and honest competition.    Furthermore, LabCorp will lose significant anticipated profits.    Because expected profits exceed mere bid preparation and proposal costs, only reimbursing protest costs would grossly under-compensate LabCorp.   Accordingly, the Court finds that LabCorp will suffer irreparable harm without permanent injunctive relief.

3. <u>Balance of Hardships</u>

Third, the Court must consider whether an injunction will result in greater harm to defendant than the irreparable harm to plaintiff.   <u>MORI Assocs.</u>, 102 Fed. Cl. at 551. Requiring the Government to continue purchasing the services from the incumbent offeror for the interim does not outweigh the irreparable harm to an offeror.   <u>HP Enter. Servs.</u>, 104 Fed. Cl. at 245-46.   Here, injunctive relief will simply maintain the status quo while the VA

conducts a lawful procurement with lawful and rational proposal evaluations.  The VA already extended LabCorp's contract through the end of June 2014 and can do so again to accommodate the use of a proper process.  Further, the VA will suffer negligible harm in re-conducting a fair procurement.  The resources needed to conduct a proper procurement are only those that should have been employed originally by the agency.  Having to employ these resources again is not an agency hardship, but an agency obligation.  Therefore, the Court finds that the balance of hardships strongly favors the granting of permanent injunctive relief.

4.  Public Interest

Fourth, the Court must determine whether granting an injunction serves the public interest by precluding "award decisions [that] destroy the public trust in government contracting and deprive the government of the benefits of full and open competition."  HP Enter. Servs., 104 Fed. Cl. at 246.  An overriding public interest exists in "preserving the integrity of the federal procurement process by requiring government officials to follow procurement statutes and regulations."  Alion Sci. and Tech. Corp. v. United States, 74 Fed. Cl. 372, 376 (2006) (citing CW Gov't Travel, Inc. v. United States, 61 Fed. Cl. 559, 576 (2004)).  Here, that integrity was compromised when the VA conducted an irrational evaluation of proposals, violating the standard set forth in the APA.  Allowing the VA's decision to stand would frustrate the public interest in fair and open competitive procurements and erode public trust in government contracting.  Thus, the Court finds that permanent injunctive relief plainly serves the public interest.

III.   Conclusion

For the reasons set forth above, Plaintiff's motion for judgment on the administrative record is GRANTED.  Defendant's motion for judgment on the administrative record is DENIED, and Defendant-Intervenor's motion for judgment on the administrative record is DENIED.

The Court permanently enjoins the VA from proceeding with the performance of the contract awarded to Quest Diagnostics Inc. for the laboratory testing and analysis services at the five VA Medical Centers located in Buffalo, Canandaigua, Bath, Syracuse, and Albany, New York.  Pursuant to Rule 54(d), the Court awards reasonable costs to Plaintiff.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge